IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRIA H.,[1]

      Plaintiff,

v.                                                                      2:24-cv-01191-KG-JMR

FRANK BISIGNANO,[2] Commissioner
of the Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Andria H.'s Opposed Motion to Reverse and Remand to Agency. Doc. 16. The Commissioner filed a response. Doc. 22. Plaintiff did not file a reply. *See* Doc. 23 (Notice of Briefing Complete). Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3), Chief District Judge Kenneth J. Gonzales referred this matter to me for a recommended disposition. Doc. 17. Having meticulously reviewed the record, read the briefing, and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") did not commit legal error and that his decision was supported by substantial evidence. I therefore recommend that the Court DENY Plaintiff's motion and affirm the ALJ's decision.

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses only the Plaintiff's first name and last initials. In so doing, the Court balances the Plaintiff's privacy interest in her personal medical information, *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, FED. R. CIV. P. 5.2(c)(2)(B).

[2] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

## I.       Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[3] is supported by substantial evidence and whether the correct legal standards were

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court

with a sufficient basis to determine that appropriate legal principles have been followed is

grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal

quotation marks and brackets omitted). The Court must meticulously review the entire record,

but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere

scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the

issues de novo, its examination of the record as a whole must include "anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has

been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of

drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.      Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-

step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). At the first four steps of the evaluation process, the claimant must show:  (1) the claimant

is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of

presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past

relevant work."  20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant

cannot show that his or her impairment meets or equals a Listing but proves that he or she is

unable to perform his or her "past relevant work," the burden of proof shifts to the

Commissioner, at step five, to show that the claimant is able to perform other work in the

national economy, considering the claimant's residual functional capacity ("RFC"), age,

education, and work experience. *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.     Background and Procedural History

Plaintiff was born in 1974, obtained two associate's degrees, and previously worked as a secretary for New Mexico State University. AR 50–51, 242.[5] Plaintiff filed an application for Supplemental Security Income ("SSI") on September 30, 2021, alleging disability since August 17, 2021,[6] due to diabetes; neuropathy in her feet, legs, arms, and hands; high blood pressure; chronic back pain; atrial fibrillation; sciatic nerve pain in both legs; arthritis in both knees; and a non-operable right shoulder. AR 242–47, 303. The Social Security Administration ("SSA") denied her claim initially on September 22, 2022. AR 140–44. The SSA then denied her claim on reconsideration on July 10, 2023. AR 156–59. Plaintiff requested a hearing before an ALJ. AR 160. On March 7, 2024, ALJ Mark Swayze held a telephonic hearing. AR 40–71. ALJ Swayze issued an unfavorable decision on May 15, 2024. AR 14–32.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2021. AR 19. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine with L5 pars defect and dextroconvex curvature, degenerative joint disease of the left knee status post ACL repair, degenerative joint disease of the right shoulder with rotator cuff tear, obesity, coronary artery disease, diabetes mellitus, peripheral neuropathy, and carpal tunnel syndrome. AR 20–22. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. AR 22–23. Because the ALJ found that none of the impairments

---

[5] Document 8 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[6] Initially, Plaintiff alleged disability since August 1, 2015. But she later amended her alleged onset date to her protective filing date of August 17, 2021. AR 47.

met a Listing, the ALJ assessed Plaintiff's RFC. AR 23–30. The ALJ found Plaintiff had the

RFC to

> perform light work as defined in 20 CFR 416.967(b) except she can tolerate occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs; she can never climb ladders, ropes, or scaffolds; she can frequently handle and occasionally reach in all directions with the right, dominant side.

AR 24.

At step four, the ALJ concluded that Plaintiff did not have any past relevant work. AR

30. The ALJ found Plaintiff not disabled at step five because she could perform jobs that exist in

significant numbers in the national economy—such as children's attendant, usher, and furniture

rental clerk. AR 30–31.

On June 14, 2024, Plaintiff requested review of the ALJ's unfavorable decision by the

Appeals Council. AR 7–10. On September 19, 2024, the Appeals Council denied the request for

review. AR 1–6. Plaintiff timely filed her appeal to this Court on November 25, 2024.[7] Doc. 1.

## IV.   Plaintiff's Claims

Plaintiff argues that the ALJ's decision should be reversed and remanded for an

immediate award of benefits. Doc. 16 at 17–26. Specifically, Plaintiff argues that the ALJ "failed

to consider the required factors from SSR 16-3p when considering [Plaintiff's] left knee pain,

and the evidence overwhelmingly showed that her left knee pain precluded the standing and

walking needed for light work." *Id.* at 19–21. Plaintiff further argues that "[t]he evidence

overwhelmingly showed that [Plaintiff] suffered from an inoperable, massive rotator cuff tear of

the right shoulder with retraction that limited her right arm to less-than-occasional reaching in all

---

[7] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 416.1481; AR 2.

directions." *Id.* at 21–23. Finally, she argues that the "ALJ exaggerated [Plaintiff's] activities of daily living, and his findings are not supported by substantial evidence." *Id.* at 23–25. Due to these errors, Plaintiff requests that the Court "remand for an immediate award of benefits." *Id.* at 25–26.

## V.    Discussion

Plaintiff argues that "[t]he ALJ violated SSR 16-3p when evaluating [Plaintiff's] symptoms and RFC, and the ALJ's decision was not supported by substantial evidence." Doc. 16 at 17. The Commissioner argues that "[t]he ALJ applied the correct legal standards in assessing Plaintiff's alleged disabling symptoms and substantial evidence in the record supports his findings." Doc. 22 at 3. For the reasons discussed below, I agree with the Commissioner.

When evaluating a claimant's symptoms, the regulations require the ALJ to use the two-step framework set forth in 20 C.F.R. § 416.929. First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 416.929(b). Second, if the first step is met, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. 20 C.F.R. § 416.929(c). In assessing the intensity and persistency of a claimant's alleged symptoms, the ALJ must consider all the evidence in the record. SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017).[8] This includes the objective medical evidence, statements from

---

[8] Social Security Rulings are "binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted."  20 C.F.R. § 402.35(b)(2).

6

the claimant,[9] medical source records (including a longitudinal record of any treatment and its success or failure), and information from non-medical sources. *Id.* at *6–7.

The ALJ's decision "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ must "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions." SSR 16-3p, 2017 WL 5180304, at *8.

Finally, the ALJ must consider the following non-exhaustive list of factors when analyzing a claimant's symptoms:

> (i) the claimant's activities of daily living ("ADLs");
> (ii) the location, duration, frequency, and intensity of the claimant's pain and other symptoms;
> (iii) precipitating and aggravating factors, including psychological disorders;
> (iv) the persistency of the claimant's attempts to find relief for these symptoms;
> (v) the regularity of the claimant's contact with medical professionals;
> (vi) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate her symptoms;
> (vii) treatment, other than medication, that the claimant receives or has received for her symptoms;
> (viii) the claimant's willingness to try prescribed treatment; and
> (ix) any measures that the claimant uses or has used to relieve her pain or other symptoms (e.g., use of crutches or cane, lying flat on her back, sleeping on a board, etc.).

*Martinez v. Kijakazi*, No. 1:20-CV-00991-WJ-KRS, 2022 WL 214539, at *7 (D.N.M. Jan. 25, 2022) (citation omitted and formatting altered). These factors are often called the *Luna* factors.

---

[9] Statements about symptoms made by a claimant include statements made directly to medical sources, to other sources, and to the SSA. SSR 16-3p, 2017 WL 5180304, at *6.

*See Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir. 1987). SSR 16-3p requires the ALJ to

consider substantially similar factors. The SSR 16-3p factors are

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms . . . ; and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7–8 (citing 20 C.F.R. § 416.929(c)(3)). The ALJ "will

discuss the factors pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8.

However, "the ALJ need not make a 'formalistic factor-by-factor recitation of the evidence,' *see*

[*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)], or address factors for which

'there is no information in the evidence of record,' *see* SSR 16-3P, 2016 WL 1119029, at *7."

*Martinez*, 2022 WL 214539, at *4 (quotations omitted).

Here, the ALJ applied the two-step framework set forth in 20 C.F.R. § 416.929 and

interpreted by SSR 16-3p. *See* AR 23–24. The ALJ found that

> the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

 AR 24. Plaintiff argues, however, that the ALJ erred when assessing Plaintiff's left knee pain,

*infra* § V(A), right shoulder pain, *infra* § V(B), and her activities of daily living, *infra* § V(C). As

discussed in the following three sections, I disagree. Thus, I recommend affirming the ALJ's

decision and denying Plaintiff's request for an immediate reward of benefits. *Infra* § V(D).

**A.  The ALJ did not err when considering Plaintiff's left knee pain.**

Plaintiff argues that "[t]he ALJ failed to consider the required factors from SSR 16-3p

when considering [Plaintiff's] left knee pain, and the evidence overwhelmingly showed that her

left knee pain precluded the standing and walking needed for light work." Doc. 16 at 19. The

Commissioner responds arguing that "[t]he ALJ applied the correct legal standards in assessing

Plaintiff's alleged disabling symptoms and substantial evidence in the record supports his

findings." Doc. 22 at 3.

Plaintiff has been in considerable left knee pain for years. *See, e.g.*, AR 842–43 (May 28,

2020, surgery for an ACL tear); AR 555 (September 10, 2020, reporting "9/10" pain in left knee

post-surgery); AR 560 (October 7, 2020, reporting the same); AR 783 (February 22, 2021,

reporting "8/10" left knee pain); AR 757 (March 9, 2022, reporting "10/10" left knee pain); AR

1129 (February 13, 2023, "[l]eft knee pain unchanged"). During the March 7, 2024, ALJ hearing,

Plaintiff testified that "[w]alking and standing" made her knee pain worse. AR 58. When asked

"how far can you walk without stopping from pain or fatigue," Plaintiff replied that she can only

walk the length of her extended cab pickup truck "without getting into a lot of pain." AR 59. The

ALJ considered this testimony and the other record evidence and concluded that Plaintiff can

perform "light work." AR 23. "[T]he full range of light work requires standing or walking, off

and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,

at *6 (Jan. 1, 1983).

The ALJ's decision that Plaintiff is able to perform "light work" despite her left knee

pain is supported by substantial evidence, and Plaintiff fails to show that the ALJ legally erred.

The ALJ found that the "evidence does not support the degree of symptomology and functional limitations alleged by the claimant." AR 29. The ALJ provided a detailed, accurate survey of Plaintiff's medical records, including her left knee pain treatment. *See* AR 25–28. The ALJ thoroughly discussed Plaintiff's "moderate to severe degeneration" in her left knee. AR 28. However, the ALJ explained that the medical records show "repeat findings of normal gait/ambulation" with only one finding of an abnormal gait. *Id.* None of Plaintiff's medical providers indicate that Plaintiff is unable to stand or walk for extended periods of time. *See Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.") (quotations and citation omitted). The ALJ also pointed to Plaintiff's "activities of daily living" and the statements made by Plaintiff's mother to support his assessment that Plaintiff can perform light work. *See id.* The ALJ explains that Plaintiff

> is capable of managing her personal care independently, albeit with some reported difficulties. She is able to complete light household chores, shop for necessities, and prepare simple meals. The record indicates she also is able to attend her medical appointments without frequently missed appointments as well as generally follow her prescribed medical treatment. This evidence is inconsistent with the claimant's statements with respect to the intensity, persistence and limiting effects of her symptoms. The undersigned additionally notes far fewer limitations identified by the claimant's mother in her third party function report, noting no problems with standing or walking in one report as compared to the claimant's report of being able to walk a mere 15 to 20 feet. While the claimant's mother made clear that she had limited knowledge of the claimant's day to day functioning, this significant disparity is noted and one factor considered in making this decision. The extent of the standing/walking limitations alleged by the claimant is simply unsupported by the overall record, such as mostly normal findings of gait, ambulation, strength, and sensation as well as benefit from her medical treatment and largely intact activities of daily living. (Ex. C1E; C6E; C15E-C16E; Testimony).

*Id.* Further, the ALJ found the State Disability Determination Service medical consultants' opinions persuasive. AR 30; *see also* AR 111–32 (State Disability Determination Service

10

medical consultants' opinions). Both consultants assessed Plaintiff with an RFC that was consistent with the ALJ's RFC. Taken together, the ALJ cited evidence that a "reasonable mind might accept as adequate to support [his] conclusion" that Plaintiff's ability to walk is not as limited as she testified. *See Langley*, 373 F.3d at 1118.

Plaintiff argues that the ALJ ignored required factors when considering Plaintiff's left knee pain. Specifically, Plaintiff argues that the ALJ ignored:

> (1) [Plaintiff's] persistent attempts to obtain relief from left knee pain and treatment compliance demonstrated the severity of her symptoms, not the opposite; (2) variation in [Plaintiff's] symptoms [did] not necessarily indicate that they [were] less severe; (3) the longitudinal record showed that [Plaintiff's] left knee pain was worsening, not improving; (4) she had failed conservative treatment; and (5) she sought a second opinion for left knee surgical options.

Doc. 16 at 20. I disagree that the ALJ failed to consider any factors required by *Luna* or SSR 16-3p. Indeed, the ALJ's decision shows that "the ALJ considered all of the evidence." *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). The ALJ did not ignore Plaintiff's persistent attempts at pain relief or her longitudinal record of worsening knee pain. In fact, the ALJ provided a lengthy, accurate description of Plaintiff's medical treatment related to her left knee including her persistent attempts at pain relief. *See* AR 25–28. The ALJ also provided a reasonable justification for why he disagreed with Plaintiff's degree of reported symptoms and functional limitations. Notably, he was not required to provide a "factor-by-factor recitation of the evidence." *Martinez*, 2022 WL 214539, at *4.

Plaintiff argues that the "the ALJ's decision that [Plaintiff's] treatment led to dramatic improvement in her left knee pain is not supported by substantial evidence because undisputed evidence showed that [Plaintiff] continued experiencing and complaining of severe left knee pain after August 2022, when she noted improvement from the ablation." Doc. 16 at 20. The ALJ

accurately observed that Plaintiff underwent "radiofrequency ablation . . . with dramatic improvement of her conditions." AR 28; *see also* AR 1180 (Plaintiff, on August 17, 2022,"reports over 90% relief of left knee pain symptoms and she is able to walk without limping."). Of course, the medical records do indicate that Plaintiff's left-knee pain did return. *See, e.g.*, AR 1314 (Plaintiff, on December 12, 2023, "still has chronic ongoing pain in her left knee for which she is unable to take a reduced hydrocodone daily dose."). However, contrary to Plaintiff's argument, the ALJ acknowledged that Plaintiff has continuing left knee pain. *See* AR 28 (noting that Plaintiff "remained on hydrocodone for [left knee] pain."); *Id.* (explaining that "imaging showed moderate to severe degeneration, and the claimant may pursue joint replacement in the near future."); AR 29 (noting that "treatment notes reveal reports of benefit from her prescribed medications."). Without pain, there would neither be a need for Plaintiff to pursue surgery after she turns 50 nor would there be a need for continuing pain medication. The ALJ adequately considered that Plaintiff's left knee pain persisted after the ablation procedure.

The ALJ's finding that Plaintiff's left knee pain did not "support the degree of symptomology and functional limitations alleged," was also supported by substantial evidence. AR 29. The ALJ supported his decision with much more than a "scintilla of evidence" and the evidence is not "overwhelmed by other evidence in the record." *See Langley*, 373 F.3d at 1118. I find that the ALJ did not commit legal error by failing to consider the SSR 16-3p factors or the *Luna* factors regarding Plaintiff's left knee pain.

**B.  The ALJ did not err when considering Plaintiff's right shoulder pain.**

Plaintiff argues that "[t]he evidence overwhelmingly showed that [Plaintiff] suffered from an inoperable, massive rotator cuff tear of the right shoulder with retraction that limited her right arm to less-than-occasional reaching in all directions." Doc. 16 at 21. In other words,

12

Plaintiff argues the ALJ's decision that Plaintiff can "occasionally reach in all directions," as opposed to less-than-occasional reaching, is not supported by substantial evidence. AR 23; *see also Langley*, 373 F.3d at 1118 (A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record. . . ."). The Commissioner disagrees with Plaintiff. Doc. 22 at 3. I agree with the Commissioner.

Plaintiff has a persistent right rotator cuff tear. *See* AR 580 (September 7, 2021, MRI). She was diagnosed with right shoulder impingement syndrome. AR 578. During the March 7, 2024, ALJ hearing, Plaintiff testified that, because of her right shoulder, she has trouble reaching over her head with her right arm. AR 51. She testified that reaching towards the front "isn't that bad." AR 52. But reaching to the side is "harder." *Id.* She further described her difficulties reaching. She explained:

> [L]ike moving my arm out, it's like it pulls everything up into my neck and everything. So[,] like to reach over to a table, like if I'm sitting, and I have an end table set next to my couch, and I reach over to grab something, it really, it's hard. So[,] I really have to turn my body and grab with my other hand to get it.

AR 52–53. This is the extent of Plaintiff's testimony regarding reaching. However, she also explains that her strength is severely limited by her right shoulder, and that her shoulder often tenses up when performing certain tasks. AR 51–54. The ALJ found that Plaintiff had the RFC to "frequently handle and occasionally reach in all directions with the right, dominant side," but that Plaintiff "can never climb ladders, ropes, or scaffolds." AR 23. Occasional reaching means "extending hand(s) and arm(s) in any direction" for "up to 1/3 of the time" while at a full-time job. App. C, Physical Demands, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES.

The ALJ's decision that Plaintiff can occasionally reach in all directions, as opposed to less-than-occasional reaching, was supported by substantial evidence. And Plaintiff fails to show

13

that the ALJ legally erred. The ALJ agreed that Plaintiff is limited in her ability to reach, but not

to the degree the Plaintiff alleges. Plaintiff testified that reaching in certain directions causes her

pain, but she did not testify to the degree of the pain. *See Brown*, 801 F.2d at 362–63. The ALJ

explained that Plaintiff "has declined other treatment options, such as additional physical

therapy, other pain medications, or surgery/injection of the right shoulder, suggesting that her

level of discomfort may not be severe." AR 29. The ALJ particularly emphasized that Plaintiff

"declined surgical options or even injection therapy." AR 28. The ALJ adds that "treatment notes

reveal reports of benefit from her prescribed medications. . . ." AR 29. The ALJ further

explained that "physical examinations . . . revealed relatively minor abnormalities." *Id.* The ALJ

also found that "claimant's activities of daily living further corroborate the residual functional

capacity," pointing to Plaintiff's ability to manage her personal care independently. *Id.* The ALJ

found the opinions of the State Disability Determination Service medical consultants persuasive.

The ALJ's RFC is consistent with their opinions except that the ALJ "increased the postural and

manipulative limitations," in Plaintiff's favor. AR 30; *see also* AR 111–32 (State Disability

Determination Service medical consultants' opinions). Taken together, the ALJ cited evidence

that a "reasonable mind might accept as adequate to support [his] conclusion" that Plaintiff is

capable of occasional reaching. *See Langley*, 373 F.3d at 1118.

Plaintiff argues that the ALJ "ignored several required factors" when considering

Plaintiff's right shoulder pain. Doc. 16 at 22. Plaintiff argues that the ALJ ignored:

> (1) [Plaintiff's] persistent attempts to obtain relief from right shoulder pain and
> treatment compliance demonstrated the <u>severity</u> of her symptoms, not the opposite;
> (2) [Plaintiff's] symptoms never improved despite several kinds of treatment; and
> (3) the longitudinal record showed that [Plaintiff] failed conservative treatments,
> leaving surgery as her only option.

*Id.* at 22–23. I disagree that the ALJ ignored factors that he was required to discuss under SSR

14

16-3p or *Luna*. In fact, the ALJ's decision demonstrates that "the ALJ considered all of the evidence." *Clifton*, 79 F.3d at 1009. The ALJ acknowledged Plaintiff's "persistent attempts to obtain relief from right shoulder pain," the effectiveness of her medication, the longitudinal record, and Plaintiff's willingness to try prescribed medical treatment. *See* SSR 16-3p, 2017 WL 5180304, at *7–8; *Martinez*, 2022 WL 214539, at *7. The ALJ provided a detailed, accurate survey of Plaintiff's medical treatment history, including her right shoulder treatment. *See* AR 25–29. The ALJ acknowledged that Plaintiff continues to experience right shoulder pain. However, he found that "her level of discomfort may not be severe," given that she declined right shoulder surgery, additional physical therapy, and additional injections. AR 29. The ALJ was not required to provide a "factor-by-factor recitation of the evidence." *Martinez*, 2022 WL 214539, at *4. Thus, the ALJ sufficiently demonstrated that he considered Plaintiff's right shoulder pain as required by SSR 16-3p and *Luna.*

Plaintiff points to three allegedly erroneous findings in the ALJ's decision related specifically to her right shoulder. Upon review, the ALJ did not err in any of the ways that Plaintiff describes.

First, Plaintiff argues that "[c]ontrary to the ALJ's erroneous decision, the record showed that [Plaintiff] received several right shoulder injections, demonstrating the severity of her pain (see, e.g., AR 1096-97)." Doc. 16 at 23. However, the ALJ accurately noted that Plaintiff had a history of right shoulder injections. Indeed, the ALJ stated that Plaintiff "declined *additional* injections" in her right shoulder, thereby acknowledging her previous injections. AR 26 (emphasis added). The ALJ also wrote about Plaintiff's April 2023 injection in the right shoulder. AR 27. The ALJ repeatedly discussed injections as a potential treatment option that Plaintiff eventually declined. *See also* AR 767 (noting that Plaintiff "no longer wants

15

injections"). The ALJ sufficiently acknowledged Plaintiff's history of right shoulder injections.

Second, Plaintiff argues that "[c]ontrary to the ALJ's erroneous decision, the record showed . . . [Plaintiff] only left physical therapy to pursue her surgical options." Doc. 16 at 23. The ALJ accurately stated that Plaintiff stopped physical therapy for her right shoulder. *See* AR 29 ("The claimant has declined other treatment options, such as additional physical therapy. . . ."). And the medical records do show that Plaintiff left physical therapy to pursue shoulder surgery on September 15, 2021. AR 663. However, she was promptly evaluated for surgery on October 4, 2021. AR 769. There, she was told that she was not a candidate for rotator cuff repair surgery, and she was referred back to her orthopedist. *Id.* Plaintiff did not return for right shoulder physical therapy after she was turned away from surgery in 2021. Therefore, it was reasonable for the ALJ to mention Plaintiff's discontinuation of physical therapy without also discussing her alleged justification for stopping. *See Clifton*, 79 F.3d at 1009–10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Third, Plaintiff complains that "[t]he ALJ's reference to [Plaintiff's] physician being surprised by her range of motion is also erroneous because the ALJ ignored other important findings such as pain with the range of motion, mild crepitus with glenohumeral rotation, and 'moderate glenohumeral crepitus with a profound weakness and rotator cuff strength testing.' (AR 587 (emphasis added).)" Doc. 16 at 23. The ALJ correctly noted that Plaintiff's orthopedist was "surprised" at her "largely intact range of motion" despite her rotator cuff tear. AR 28; *see also* AR 587 (October 4, 2021, "Patient has surprisingly well-maintained range of motion but does experience pain with end range of forward flexion"). Plaintiff complains that the ALJ referred to this note while "ignor[ing] other important findings," providing four examples of

16

such. The findings Plaintiff points to all happen to be from a single medical appointment on October 4, 2021. *See* AR 587 ("Patient has surprisingly well-maintained range of motion but does experience pain with end range of forward flexion has pain with lateral abduction. Mild crepitus with glenohumeral rotation . . . There is moderate glenohumeral crepitus with a profound weakness and rotator cuff strength testing."). Importantly, the ALJ was not required to reference this particular medical appointment. *See Clifton*, 79 F.3d at 1009–10. Nonetheless, the ALJ *did* cite to this particular appointment when discussing Plaintiff's right arm strength, noting that this appointment was an outlier in her medical records. *See* AR 28 ("There is one occasion of slightly reduce[d] strength of the right arm with normal findings thereafter. (Ex. C3F, p. 39; C16F).").[10] The ALJ went on to explain that "while there are rare occasions of more significant findings, the majority of examination findings are benign." AR 28.  With regard to the remainder of these "important findings," the ALJ indisputably acknowledged that Plaintiff's right shoulder is seriously injured. *See, e.g.*, AR 25–26 (discussing Plaintiff's right shoulder rotator cuff tear, impingement syndrome diagnosis, and related treatment). The ALJ also acknowledged that medical records showed that Plaintiff had a limited range of motion. *See, e.g.*, AR 27 (noting Plaintiff's "range of motion was intact other than above 100 degrees flexion"). The ALJ did not emphasize Plaintiff's right shoulder crepitus, or joint crackling, but Plaintiff does not explain why crepitus is an "important finding." As such, the ALJ did not fail to mention important medical findings when discussing Plaintiff's right shoulder.

Plaintiff failed to show that the ALJ legally erred when limiting Plaintiff to occasional reaching. *See Maes*, 522 F.3d at 1096. Plaintiff also failed to show that the ALJ's decision was not supported by substantial evidence. *See id.*

---

[10] "Ex. C3F, p.39" is AR 587.

### C. The ALJ did not err when considering Plaintiff's activities of daily living.

Lastly, Plaintiff argues that the "ALJ exaggerated [Plaintiff's] activities of daily living, and his findings are not supported by substantial evidence." Doc. 16 at 23. The Commissioner responds by arguing that "Plaintiff ignores that the ALJ did not rely solely on her admitted activities to find her symptoms not entirely consistent with the overall record but cited them as one part of the symptom evaluation." Doc. 22 at 6.

Regarding Plaintiff's activities of daily living, the ALJ wrote:

The claimant's activities of daily living further corroborate the residual functional capacity. Despite her alleged impairments, the record indicates that the claimant is capable of managing her personal care independently, albeit with some reported difficulties. She is able to complete light household chores, shop for necessities, and prepare simple meals. The record indicates she also is able to attend her medical appointments without frequently missed appointments as well as generally follow her prescribed medical treatment. This evidence is inconsistent with the claimant's statements with respect to the intensity, persistence and limiting effects of her symptoms.

AR 29. The ALJ also discussed how Plaintiff's mother's third-party function report significantly differed from Plaintiff's reports of her own functioning. *Id.*

A review of the record shows that the ALJ did not "exaggerate" Plaintiff's activities of daily living. Notably, the ALJ's description of Plaintiff's activities of daily living is consistent with Plaintiff's own reports. *Compare* AR 24, 29 *with* AR 324–31 (Plaintiff's Function Report, dated October 26, 2021); 357–67 (Plaintiff's Function Report, dated May 17, 2023).

Plaintiff argues that her "ability to mop and do laundry twice a week is no indication that she can perform light work on a regular and continuing basis—*i.e.*, eight hours a day, five days a week." Doc. 16 at 24. However, as the Commissioner argues, "the ALJ did not rely solely on her admitted activities to find her symptoms not entirely consistent with the overall record but cited them as one part of the symptom evaluation." Doc. 22 at 6. The ALJ provided a reasoned

18

discussion of Plaintiff's activities of daily living in conjunction with the objective medical evidence, Plaintiff's mother's reports, and the opinions of the State Disability Determination Service medical consultants. *See Bainbridge v. Colvin*, 618 F. App'x 384, 388 (10th Cir. 2015) (finding that the ALJ did not err when the ALJ used the activities of daily living of just "one part of her adverse credibility finding"). The ALJ did not rely solely on Plaintiff's activities of daily living when assessing her RFC.

Plaintiff argues that "attending her treatment appointments speaks to the severity of [her] symptoms, not the opposite." Doc. 16 at 24. However, the ALJ never asserted that Plaintiff's ability to attend her medical appointments indicated that her symptoms were not severe. The ALJ merely observed the fact, which is supported by the record, that Plaintiff "also is able to attend her medical appointments without frequently missed appointments." AR 29.

Finally, Plaintiff critiques the ALJ's reliance on Plaintiff's mother's third-party function reports. Doc. 16 at 24; *see also* AR 282–89 (Mother's Third-party Function Report, dated August 28, 2021); 349–56 (Mother's Third-party Function Report, dated May 16, 2023). Plaintiff accurately explains that her "mother repeatedly wrote, 'I don't know,' throughout the function reports, sometimes followed by exclamation points." Doc. 16 at 24. Plaintiff argues that her mother "only saw her for a few hours at a time" and "was largely ignorant about [Plaintiff's] condition." *Id.* However, the ALJ explicitly recognized this point. The ALJ acknowledged that claimant's mother "made clear that she had limited knowledge of the claimant's day to day functioning." AR 29. For this reason, the ALJ stated that the mother's functioning report was just "one factor considered in making this decision." *Id.* That said, the ALJ also reasonably observed that there is a sizeable discrepancy with "claimant's report of being able to walk a mere 15 to 20 feet" and her mother asserting that Plaintiff has "no problem walking or standing." *Id.*; *see also*

19

282 (Plaintiff's mother reporting that she sees Plaintiff "2 to 3 times a month" on August 28, 2021); AR 349 (Plaintiff's mother reporting that she sees Plaintiff for a "couple of hours every other month" on May 16, 2023). The ALJ reasonably justified using claimant's mother's third-party function report as one factor in assessing Plaintiff's RFC.

The ALJ did not exaggerate Plaintiff's activities of daily living. Therefore, Plaintiff has not shown that the ALJ's findings, based in part on Plaintiff's activities of daily living, were not supported by substantial evidence. *See Maes*, 522 F.3d at 1096.

**D. The Court should affirm the ALJ's decision and deny Plaintiff's request for an immediate award of benefits.**

As discussed in the preceding sections, Plaintiff failed to show that the ALJ legally erred or failed to support his decision with substantial evidence. *See Maes*, 522 F.3d at 1096. Therefore, I recommend that the Court affirm the ALJ's decision.

Plaintiff also requests that the Court "reverse and remand for an immediate award of benefits." Doc. 16 at 25–26. The Commissioner opposes an immediate award of benefits. Doc. 22 at 9–10. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Because I recommend affirming the ALJ's denial of Plaintiff's SSI application, an immediate award of benefits is not warranted. *See Morris v. O'Malley*, No. 1:22-CV-00318-LF, 2023 WL 8827730, at *10 (D.N.M. Dec. 21, 2023) (holding the same).

**VI.    Recommendation**

I recommend that the Court find that Plaintiff failed to show that the ALJ's decision was not supported by substantial evidence or that the ALJ legally erred. *See Maes*, 522 F.3d at 1096. As such, I recommend that the Court affirm the ALJ's denial of Plaintiff's application for SSI

benefits. I also recommend that the Court deny Plaintiff's request for an immediate award of

benefits.

Based on these recommendations, I finally recommend that the Court DENY Plaintiff's

Opposed Motion to Reverse and Remand to Agency. Doc. 16.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

JENNIFER M. ROZZONI
United States Magistrate Judge